UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KOLIE LANAR McADOO,

       Petitioner,

                         Case No. 15-12579

v.

                         HON. MARK A. GOLDSMITH

DEWAYNE BURTON

       Respondent.

_____/

**OPINION & ORDER**
**(1) DENYING THE HABEAS PETITION (Dkt. 1),**
**(2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,**
**AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Kolie Lanar McAdoo, a state prisoner at the Central Michigan Correctional Facility in St. Louis, Michigan, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted in 2012 of breaking and entering two businesses, possession of burglar tools, and safe breaking. He was sentenced as a habitual offender to a maximum term of twenty years in prison. He alleges in his pro se petition that: (i) his arrest was illegal and his statement was inadmissible as fruit of the poisonous tree; (ii) he was denied his right of confrontation by the admission of hearsay; (iii) he was denied a fair trial by evidence of other break-ins; (iv) he denied a fair trial by the admission of an expert witness's testimony, and defense counsel was ineffective for failing to move to exclude the testimony; (v) he was denied his right to effective assistance of counsel by counsel's failure to (a) object to the joinder of his two criminal cases, (b) request a speedy trial in the first case, and (c) request a continuance in the second case; (vi) he was denied due process by the loss or destruction of important evidence; (vii) he was denied a fair trial by the prosecutor's improper argument denigrating the defense; (viii) the trial court improperly

amended the judgment of sentence; and (ix) he did not receive timely notice of the habitual offender charge, and the trial court did not address his objections or make any findings about the validity of his prior convictions. For the reasons that follow, the Court denies the petition, declines to issue a certificate of appealability, and grants leave to proceed in forma pauperis on appeal.

## I. BACKGROUND

The charges against Petitioner arose from break-ins at two businesses on Eight Mile Road in Warren, Michigan on December 19, 2011. In case number 12-656, Petitioner was charged with breaking and entering a restaurant, safe-breaking, and possession of burglar tools. In case number 12-3414, Petitioner was charged with breaking and entering a wig shop and possession of burglar tools. The two cases were joined for a jury trial in Macomb County Circuit Court in Mount Clemens, Michigan.

Stephen Stover testified that he was an area supervisor for Long John Silver restaurants and that, on December 19, 2011, the security bar of the door at the restaurant on Eight Mile Road in Warren was pried, and the inside panic bar was sprung from the outside of the building. In addition, both the knob to the safe and the tumbler inside the safe were broken. The business had an alarm system and a video monitor system. 10/11/12 Trial Tr. at 43-45, PageID.533-535 (Dkt. 10-19).

Yang Sun Laby testified that she owned Susie's Wig Shop on Eight Mile Road west of Van Dyke Avenue. Her business was equipped with an alarm, but no camera. On December 19, 2011, someone from the alarm company called her house and said that somebody had broken into her shop. When she and her husband arrived at the shop, they noticed that the door was jammed and that the inside of the shop was a mess. Id. at 49-55, PageID.539-545.

Warren police officer Randall Richardson testified that, around 3:30 a.m. on December 19, 2011, he was dispatched to a business at 3755 Eight Mile Road due to an alarm coming from the rear door and the safe. The rear door to the business appeared to have been pried, and the key holder stated that the damage was new and nobody was allowed in the business. After viewing a video from the business, Richardson issued a notice urging other officers to be on the lookout for a black male wearing a knit cap pulled over his face, a black jacket, a hoodie with a white interior, gloves, black pants, and shiny black tennis shoes with bright white soles. He could not identify the person in the video. Id. at 56-66, PageID.546-556.

Warren police officer Jeff Stieber testified that at 5:24 a.m. on December 19, 2011, he was dispatched to Susie's Wig Shop at 7635 Eight Mile Road. The door had been pried open and someone had gone inside the business. When he exited the business, he observed a Detroit police car at a business across the street from the wig shop. He subsequently learned that there was a breaking and entering directly across the street and that the Detroit officers had Petitioner in custody about a quarter of a mile away. He went to the location where Petitioner was in custody and saw Petitioner seated in the back of a scout car. Petitioner was wearing a gray sweatshirt with a distinctive white hood under a dark-colored jacket, dark pants, a black hat, and dark shoes with bright white soles. According to Officer Stieber, the clothing was identical to the description that Officer Richardson had provided earlier that evening. Id. at 66-80, PageID.556-570.

Detroit Police Officer Derrick Mason testified that he was on Bennett Street near Outer Drive at 5:55 a.m. on December 19, 2011, when he observed Petitioner sitting on a ledge in front of a vacant building. There was a crowbar within arm's length in the grassy area directly behind the ledge where Petitioner was seated. Petitioner was wearing all dark clothing, which was significant because the police had received notification look out for a black male in dark clothing

who was breaking into businesses.  Petitioner informed Officer Mason that he was waiting for the bus, but there was no bus stop nearby.  After a brief investigation, the police took Petitioner into custody, and at the district office, Petitioner blurted out, "How did you guys find out it was me?  I had a mask on.  Are you guys going to charge me with all six businesses?"  Id. at 82-103, PageID.572-593.

Evidence technician Donald Seidl used Microsil on the tool marks at the crime scenes. Seidl explained that Microsil is a silicone putty compound, which hardens into a cast.  The cast, in turn, can be compared to a tool to determine whether the tool made the pry marks.  He put Microsil on the door and the safe at the restaurant and on the door at the wig shop.  Id. at 104-110, PageID.594-600; 10/12/12 Trial Tr. at 3-5, PageID.605-607 (Dkt. 10-20).

Detroit police officer David Tanner testified that he was on patrol with Officer Derrick Mason at 5:53 a.m. on December 19, 2011.  They received a call regarding a breaking and entering at Cash Advance, a business on Mound Road.  They received a second call to back up another scout car for a couple of breaking and entering incidents next door to each other on Eight Mile Road at Van Dyke Avenue.  They also received a message from the Warren Police Department about a couple of breaking-and-entering incidents on the Warren side of Eight Mile Road, close to where the Detroit breaking and entering incidents occurred.   10/12/12 Trial Tr. at 6-15, PageID.608-617.

Officer Tanner made contact with Petitioner on Van Dyke Avenue, south of Outer Drive. Petitioner was sitting on a three-foot wall near a vacant business, and he fit the description of the suspect that the officers were looking for.  He was wearing a black jacket, gray jeans or jogging pants, a gray hooded sweatshirt, and gym shoes.  Petitioner informed him that he was waiting for his cousin to pick him up.  He had a flashlight in his pocket, and there was a crowbar on the ground

behind him.  Tanner picked up the crowbar and later seized Petitioner's clothes in the cell block at the precinct.  Id. at 15-32, PageID.617-634.

Warren police officer Richard Williams testified that he went to a Detroit police station on December 19, 2011, and took physical custody of Petitioner.  He also took custody of a crowbar, a ski mask, a flashlight, gloves, shoes, and a gray hoodie.  Id. at 32-37, PageID.634-639.

Detective Kevin Borcyz of the Warren Police Department was the officer in charge of the two cases.  He explained the chain of custody for the items in evidence.  He also testified that the Long John Silver restaurant was about two miles west of Susie's Wig Shop, and that Petitioner was arrested less than one mile from the wig shop.  Borcyz opined that the video from the restaurant and the clothes that Petitioner was wearing at his arrest provided probable cause to arrest Petitioner for the breaking and entering at the restaurant.  There was a delay in bringing charges against Petitioner for the breaking and entering at the wig shop because there was no video from that location.  However, after the Michigan State Police determined that the pry mark at the wig shop matched the crowbar found near Petitioner before his arrest, there was probable cause to arrest Petitioner for the breaking and entering at the wig shop.  Borcyz also testified that there were six instances of breaking and entering on the same night and in the same area of Eight Mile Road and that Petitioner's thumb print was discovered on a cash register at a business on the Detroit side of Eight Mile Road.  Id. at 37-64, PageID.639-666.

The trial court qualified Lieutenant Brian Bergeron of the Michigan State Police as an expert in firearm and tool marks.  Lieutenant Bergeron examined the crowbar in evidence and two Microsil casts.  He opined that the tool marks at the wig shop were made by the crowbar in evidence, but he was unable to say conclusively whether the crowbar made the pry marks at the

restaurant. He also could not eliminate the crowbar as the source of the marks at the restaurant. Id. at 68-84, PageID.670-688.

Petitioner did not testify or present any witnesses. His defense was that he was innocent and that the case was one of mistaken identity.

On October 12, 2012, the jury found Petitioner guilty, as charged, of two counts of breaking and entering a building with intent to commit a larceny, two counts of possession of burglar tools, and one count of safe-breaking. On November 20, 2012, the trial court sentenced Petitioner to three terms of ten to twenty years for the safe-breaking, breaking and entering, and possession of burglar tools in the first case and two terms of six to twenty years in prison for the breaking and entering and possession of burglar tools in the second case. The court ordered all the sentences to run concurrently.

Petitioner, through counsel, filed a claim of appeal in the Michigan Court of Appeals, which affirmed all of Petitioner's convictions, as well as his sentence in the first case. The Court of Appeals remanded Petitioner's second case for re-sentencing because the trial court had improperly sentenced Petitioner as a habitual offender in that case. See People v. McAdoo, Nos. 313880 and 313881, 2014 WL 4263234 (Mich. Ct. App. Aug. 28, 2014).[1] Petitioner then appealed to the Michigan Supreme Court, which denied leave to appeal on March 6, 2015, because it was not persuaded to review the issues. See People v. McAdoo, 859 N.W.2d 711 (Mich. 2015).[2]

---

[1] On remand, the trial court re-sentenced Petitioner in the second case to two concurrent terms of thirty-eight months to ten years in prison with 1,753 days of credit. The sentence was ordered to run concurrently with Petitioner's sentence in the first case. See http://circuitcourt.Macombgov.org/CircuitCourt, case number 2012-003414-FH.

[2] Justice Bridget Mary McCormack wrote separately to express her unease with the expert witness's testimony regarding tool-mark evidence. She stated that there were serious questions about whether such evidence has an adequate scientific foundation to allow its admission under the Michigan Rules of Evidence, but that she concurred in the majority's order denying leave to appeal because the issue was unpreserved and because she was not convinced that Petitioner had

On July 20, 2015, Petitioner commenced this action.  See Pet. for Writ of Habeas Corpus (Dkt. 1).  Respondent, through counsel, filed an answer to the petition, alleging that habeas claims one, three, six, and seven are procedurally defaulted and that claims one, three, four, eight, and nine are not cognizable on habeas review.  Respondent further alleges that the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts.  Resp't Answer in Opp'n to Pet. for Writ of Habeas Corpus at ii-iii, 74, PageID.47-48, 124 (Dkt. 9).  Petitioner filed a reply in which he asks the Court to grant him a new trial on the basis that the decision of the Michigan Court of Appeals was objectively unreasonable and contrary to, or an unreasonable application of, Supreme Court precedent.  Pet'r Brief in Reply to Resp't Answer to Pet. for Writ of Habeas Corpus (Dkt. 11).

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

demonstrated entitlement to relief, given the other evidence of guilt.  Justice Richard H. Bernstein joined Justice McCormack's statement.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102. Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground that supported the

state-court's decision is examined and found to be unreasonable under the AEDPA. <u>See</u> <u>Wetzel</u> <u>v. Lambert</u>, 520 U.S. 520, 525 (2012).

"If this standard is difficult to meet, that is because it was meant to be." <u>Harrington</u>, 562 U.S. at 102. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. <u>Id</u>. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." <u>Id</u>. Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." <u>Woodford v.</u> <u>Viscotti</u>, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal courts, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington</u>, 562 U.S. at 103.

A state-court's factual determinations are presumed correct on federal habeas review. <u>See</u> 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. <u>Id</u>.; <u>Warren v. Smith</u>, 161 F.3d 358, 360-361 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." <u>Cullen v.</u> <u>Pinholster</u>, 563 U.S. 170, 181 (2011). Finally, a state court's review of a habeas petitioner's claim for "plain error" is equivalent to an adjudication on the merits and, therefore, AEDPA deference applies to such rulings. <u>Stewart v. Trierweiler</u>, 867 F.3d 633, 638 (6th Cir. 2017).

### III. ANALYSIS

**A. The Arrest**

The first habeas claim challenges the legality of Petitioner's arrest. Petitioner contends that there was no probable cause for his arrest, that he was detained for an investigation, and that his subsequent statement to the police was inadmissible as fruit of the poisonous tree.

The Michigan Court of Appeals reviewed this claim for "plain error" affecting Petitioner's substantial rights because Petitioner did not preserve the issue for appellate review by raising it in the trial court.[3] The Court of Appeals then analyzed Petitioner's claim and concluded that his arrest was legal because the officers had reasonable cause to believe that Petitioner had committed a felony. The Court of Appeals noted that Petitioner's clothing matched the suspect's clothing, that he had a suspicious story about why he was sitting on a ledge by a vacant building before 6:00 a.m., and that there was a crowbar lying behind him.

This Court finds it unnecessary to address the merits of Petitioner's claim because the Supreme Court held in Stone v. Powell, 428 U.S. 465 (1976), that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494 (internal footnote omitted). Petitioner asserts in his reply brief that he did not have a full and fair opportunity to raise his claim in state

_____

[3] As a result of the state court's finding that Petitioner failed to preserve this claim, as well as, claims three, six, and seven, Respondent contends that those claims are procedurally defaulted. In the habeas context, a procedural default is "a critical failure to comply with state procedural law." Trest v. Cain, 522 U.S. 87, 89 (1997). Ordinarily, a procedural default is not a jurisdictional matter, Johnson v. Lee, 136 S. Ct. 1802, 1806 (2016) (citing Trest, 522 U.S. at 89), and "'[j]udicial economy might counsel' bypassing a procedural-default question if the merits 'were easily resolvable against the habeas petitioner.'" Id. (quoting Lambrix v. Singletary, 520 U.S. 518, 525 (1997)). Petitioner's claims do not warrant habeas relief, and the Court finds it more efficient to address the substantive merits of Petitioner's claims than to determine whether the claims are procedurally defaulted. The Court, therefore, excuses the alleged procedural defaults in this case and will consider the substantive merits of Petitioner's claims.

court due to a breakdown in Michigan's procedural mechanism for raising Fourth Amendment claims. However, "the <u>Powell</u> 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." <u>Good v. Berghuis</u>, 729 F.3d 636, 639 (6th Cir. 2013).

"Michigan provide[s] an adequate avenue to raise a Fourth Amendment claim." <u>Hurick v. Woods</u>, 672 F. App'x 520, 535 (6th Cir. 2016), <u>cert</u>. <u>denied</u>, 138 S. Ct. 96 (2017). A defendant may file a motion to suppress evidence before or during trial, <u>People v. Ferguson</u>, 135 N.W.2d 357, 358-359 (Mich. 1965), and an appellate court may grant relief on a Fourth Amendment claim raised for the first time on appeal "if it appears from the trial record that[,] had a motion to suppress been made[,] it should have been granted." <u>People v. Moore</u>, 216 N.W.2d 770, 773 (Mich. 1974). Although Petitioner apparently abandoned his Fourth Amendment claim in the state trial court, he subsequently raised the claim in the Michigan Court of Appeals and in the Michigan Supreme Court. Because he had an opportunity to present his claim in state court, this Court is precluded from granting him habeas corpus relief on his Fourth Amendment claim. <u>Rashad v. Lafler</u>, 675 F.3d 564, 570 (6th Cir. 2012).

**B. Hearsay**

Petitioner alleges next that he was denied his right of confrontation by testimony about other break-ins on Eight Mile Road on the night in question and by Detective Borcyz' testimony that his thumb print was found at one of the Detroit businesses that was burglarized. Petitioner contends that the testimony was hearsay and that it violated his rights under the Confrontation Clause because he had no opportunity to cross-examine the witnesses who identified him as the perpetrator of the other crimes. The Michigan Court of Appeals adjudicated Petitioner's claim on

the merits and concluded that the trial court erred in allowing evidence about Petitioner's fingerprint, but that the error was harmless.

### 1. Clearly Established Supreme Court Law

The Sixth Amendment to the United States Constitution guarantees defendants in criminal cases "the right . . . to be confronted with the witnesses against him."  U.S. CONST. amend. VI. But "[a] witness's testimony against a defendant is . . . inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." Melenez-Diaz v. Massachusetts, 557 U.S. 305, 309 (2009) (citing Crawford v. Washington, 541 U.S. 36, 54 (2004)).

> In Melendez-Diaz, the Supreme Court held that the admission of affidavits from forensic analysts who had performed drug analysis on evidence seized from a suspect but did not themselves testify violated the Confrontation Clause.  557 U.S. at 329, 129 S.Ct. 2527.  Relying heavily on this decision, the Court in Bullcoming [v. New Mexico, 564 U.S. 647 (2011)] held that the Confrontation Clause barred the admission of a blood alcohol level test where the certifying analyst did not testify and the government instead relied on the testimony of another analyst familiar with the forensic procedures.  The Bullcoming Court determined that the analyst's report, like the affidavit at issue in Melendez-Diaz, was testimonial in nature because it was made in aid of a police investigation "solely for an evidentiary purpose."  Bullcoming, 131 S.Ct. at 2717 (internal quotation marks omitted).

United States v. Collins, 799 F.3d 554, 585 (6th Cir. 2015).

### 2. Application

The individual who determined that Petitioner left his thumb print at one of the other businesses that was burglarized on December 19, 2011 did not testify at Petitioner's trial, and there is no indication in the record that the person was unavailable or that Petitioner had a prior opportunity to cross-examine the person.   But even assuming that Petitioner's right of confrontation was violated by testimony about the fingerprint expert's conclusions, Confrontation Clause errors are subject to harmless-error analysis.  Delaware v. Van Arsdall, 475 U.S. 673, 684

(1986). "[T]he standard for determining whether habeas relief must be granted is whether the . . . error 'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." O'Neal v. McAninch, 513 U.S. 432, 436 (1995).

Several trial witnesses testified that Petitioner's clothing matched the clothing of the suspect seen in the videotape at the Long John Silver restaurant, and the prosecution's expert witness testified that the crowbar found near Petitioner before his arrest made the pry marks at the wig shop. Prior to his arrest, Petitioner told an officer that he was waiting for a bus, but there was no bus stop nearby, and he told another officer that he was waiting for his cousin to pick him up.

Significantly, when the police processed Petitioner at the police station, he asked, "How did you guys find out it was me? I had a mask on. Are you guys going to charge me with all six businesses?" 10/11/12 Trial Tr. at 92-93, PageID.582-583. Although the arresting officer told Petitioner that he was being arrested for the burglary of a business, the officer did not tell Petitioner how many burglaries had been committed or were being investigated. Id. at 100-101, PageID.590-591.

Given the strength of the evidence against Petitioner, including his implicit admission that he had committed six burglaries on the night in question, hearsay testimony that Petitioner left his thumb print at one of the burglarized businesses could not have had a substantial and injurious effect or influence on the jury's verdict. Therefore, the Confrontation Clause error was harmless.

**C. Other Acts Evidence**

In a related claim, Petitioner alleges that testimony about numerous other break-ins on the night in question deprived him of due process and a fair trial. According to him, the evidence was inflammatory, it implied that he was guilty of the charged offenses, it confused and misled the jury, and it was inadmissible under Michigan Rule of Evidence 404(b) or any other theory.

The Michigan Court of Appeals reviewed this claim for "plain error affecting substantial rights" because Petitioner did not preserve the issue for appellate review by objecting to the evidence on the same ground in the trial court. The Court of Appeals then concluded that there was no basis for reversal because defense counsel opened the door to questions about the other break-ins when he asked a detective whether he was aware of the crimes.

This Court finds no merit in Petitioner's claim because, "[t]o the extent that any testimony and comments violated Michigan's rules of evidence, such errors are not cognizable on federal habeas review." Hall v. Vasbinder, 563 F.3d 222, 239 (6th Cir. 2009). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991).

Errors in the application of state law, especially rulings on the admission or exclusion of evidence, usually are not questioned in a federal habeas corpus proceeding. Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988). "[F]ederal habeas courts review state court evidentiary decisions only for consistency with due process," Coleman v. Mitchell, 268 F.3d 417, 439 (6th Cir. 2001) (citing Patterson v. New York, 432 U.S. 197, 202 (1977)), and states ultimately "have wide latitude with regard to evidentiary matters under the Due Process Clause." Wilson v. Sheldon, 874 F.3d 470, 476 (6th Cir. 2017) (citing Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000)).

Furthermore, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003). Although "the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, see Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not explicitly addressed the issue in constitutional terms." Id. at 513. Thus, the state appellate court's rejection of Petitioner's claim in this case was not contrary to, or an unreasonable application of, any Supreme Court decision under § 2254 (d)(1), and Petitioner has no right to relief on the basis of his evidentiary claim.

### D. The Expert Witness

Petitioner alleges that he was denied a fair trial by the admission of Lieutenant Brian Bergeron's testimony on tool marks. Bergeron opined that pry marks at the wig shop were made by the crowbar discovered near Petitioner immediately before his arrest. 10/12/12 Trial Tr. at 80-81, PageID.682-683. Petitioner contends that it was error to introduce Bergeron's testimony as scientific evidence because tool-mark evidence does not meet the requirements of Michigan Rule of Evidence 702. Petitioner further alleges that defense counsel was ineffective for failing to attempt to exclude Bergeron's testimony or at least move for a hearing under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).[4]

The Michigan Court of Appeals reviewed Petitioner's claim about the tool-mark testimony for "plain error" because Petitioner did not raise his arguments about the reliability of tool-mark

---

[4] In Daubert, the Supreme Court held that, under the Federal Rules of Evidence, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589.

evidence in the trial court and because he did not object when the trial court qualified Bergeron as an expert in tool marks. The Court of Appeals nevertheless found no plain error because Bergeron's testimony appeared to comport with generally accepted guidelines for tool-mark identification. The Court of Appeals also concluded that defense counsel was not ineffective for failing to object to Bergeron's testimony.

As noted above, rulings on the admission or exclusion of evidence usually are not questioned in a federal habeas corpus proceeding, Cooper, 837 F.2d at 286, and the alleged violation of Michigan's rules of evidence is not a cognizable claim on federal habeas review. Hall, 563 F.3d at 239. An evidentiary error can rise to the level of a federal constitutional claim warranting habeas corpus relief if the error was "so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." McAdoo v. Elo, 365 F.3d 487, 494 (6th Cir. 2004) (citing Estelle, 502 U.S. at 69-70). However,

> [t]he Supreme Court did not set a constitutional floor for the reliability of scientific evidence in Daubert, see Norris v. Schotten, 146 F.3d 314, 335 (6th Cir. 1998), and screening evidence through Daubert's standards is not constitutionally required. Rather, . . . "state rules of evidence are the primary safeguard against unreliable expert testimony being put before the jury[,] and the Due Process Clause serves as a distant backstop to these rules." Bojaj, 2016 WL 4502438, at *6; see Dowling v. United States, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

Bojaj v. Berghuis, 702 F. App'x 315, 321 (6th Cir. 2017).

The Michigan Rules of Evidence provide

> [i]f the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Mich. R. Evid. 702.

Bergeron's testimony no doubt assisted the jury in understanding the evidence and in determining whether Petitioner committed the burglary at the wig shop, and his testimony was based on sufficient facts. Moreover, his testimony appeared to be the product of reliable principles and methods, which he applied to the facts of Petitioner's case, and, as noted by the Michigan Court of Appeals, he

> testified regarding the process he used to analyze the tool marks, as well as his qualifications. He testified further that he documented his analysis and that a second examiner agreed with his assessment.

McAdoo, 2014 WL4263234, at *5; see also 10/12/12 Trial Tr. at 68-73, 82, PageID.670-675, 684. Therefore, his expert testimony did not render Petitioner's trial fundamentally unfair, and Petitioner's right to due process was not violated by the admission of the testimony.

Additionally, defense counsel was not ineffective for failing to attempt to exclude Bergeron's testimony or for failing to move for a Daubert hearing. The trial court in all likelihood would not have excluded the evidence if defense counsel had objected, and "the failure to make futile objections does not constitute ineffective assistance." Altman v. Winn, 644 F. App'x 637, 644 (6th Cir.), cert. denied sub nom Altman v. Brewer, 137 S. Ct. 76 (2016).

### E. Trial Counsel

Petitioner claims that his trial attorney deprived him of his Sixth Amendment right to effective assistance of counsel by failing to (i) object to the joinder of his two cases, (ii) object to the delay in trying him in the first case (the Long John Silver case) and assert his speedy trial rights in that case, and (iii) request an adjournment of trial in the second case (the wig shop case).

The Michigan Court of Appeals adjudicated this claim on the merits and concluded that defense counsel was not ineffective for failing to move to sever the two cases because any effort to sever the two cases would have failed. The Court of Appeals rejected Petitioner's claim about

defense counsel's failure to object to the delay in trying him because Petitioner did not show how the delay prejudiced him.

The Court of Appeals also rejected Petitioner's claim about the lack of a request for an adjournment in the second case. The Court of Appeals stated that the only new preparation counsel could have made pertained to the tool-mark identification evidence, that the trial court probably would not have found the evidence inadmissible, and that Petitioner had not shown how further preparation would have aided his case.

### 1. Clearly Established Federal Law

The "clearly established Federal law" for Petitioner's claims of ineffective assistance of counsel is <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Cullen</u>, 563 U.S. at 189. Under <u>Strickland</u>, a defendant must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." <u>Strickland</u>, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." <u>Id</u>.

The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Id</u>. at 688.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id</u>. at 687. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694.

"The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." <u>Harrington</u>, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Id</u>.

### 2. Joinder of the Two Cases

Petitioner asserts that his attorney should have objected to the joinder of his two cases for trial because neither was strong enough to stand on its own. He maintains that the joinder created confusion for the jury and overwhelming prejudice for him.

In Michigan, a trial court may join two or more criminal cases against a single defendant for trial "when appropriate," and "[j]oinder is appropriate if the offenses are related." Mich. Ct. R. 6.120(B)(1). "For purposes of this rule, offenses are related if they are based on (a) the same conduct or transaction, or (b) a series of connected acts, or (c) a series of acts constituting parts of a single scheme or plan." <u>Id</u>.

Petitioner's two cases were based on a series of connected acts that were part of a single scheme or plan. They involved two burglaries committed within a few hours of each other at businesses located within approximately two miles of each other on the same street. The cases were related, and, according to the Michigan Court of Appeals, evidence of one crime would have been admissible at trial in the other case under Michigan Rule of Evidence 404(b).[5] The trial court, moreover, announced about six months before trial that it would try the cases together. 4/11/12 Tr. at 5, PageID.268 (Dkt. 10-7). For all these reasons, a motion to sever the cases likely would

---

[5] The state court's interpretation of state law binds this Court on habeas corpus review. <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005).

have been futile, and "failing to make a futile motion is neither unreasonable nor prejudicial."

Jacobs v. Sherman, 301 F. App'x 463, 470 (6th Cir. 2008) (citing Strickland, 466 U.S. at 687).

### 3. Failure to Seek a Speedy Trial in the First Case

Petitioner asserts that defense counsel was ineffective for failing to object to the delay in

trying him in the Long John Silver case and failing to assert his speedy trial rights in that case.

The record indicates that Petitioner was bound over for trial in state circuit court on

February 23, 2012, and, initially, there was an attempt to resolve the case through a plea agreement.

See 4/4/12 Tr. at 3-4, PageID.261-262 (Dkt. 10-6). But by the time of the first pretrial conference

on April 11, 2012, Petitioner had decided not to plead guilty, and his first attorney requested a trial

date. See 4/11/12 Tr. at 3-4, PageID.266-267. Some of the remaining delay was Petitioner's fault.

As explained by the Michigan Court of Appeals,

> [o]n April 30, 2012, pretrial proceedings were adjourned because defendant wanted
> a new attorney. On May 16, 2012, the proceedings had to be adjourned because
> defendant was unavailable. On June 1, 2012, his attorney requested adjournment,
> in part to determine what type of evidentiary hearing his client wanted him to bring;
> it is not revealed in the record why he never brought that hearing. On June 28,
> 2012, defendant indicated that he retained a new attorney, but on July 2, 2012, his
> appointed attorney returned and argued a motion to quash.

McAdoo, 2014 WL 4263234, at *6.

On September 18, 2012, Petitioner informed the trial court that he wanted to represent

himself because his attorney was not sufficiently argumentative. 9/18/12 Tr. at 5-8, PageID.332-

336 (Dkt. 10-15). He did not complain about the lack of a speedy trial. In fact, he requested

additional evidence. Id. at 5-6, PageID.332-333. Furthermore, Petitioner was tried only slightly

more than seven months after his arraignment in state circuit court, and he has not demonstrated

that he was prejudiced by the lack of a speedier trial. The Court concludes that defense counsel

was not ineffective for allegedly failing to assert Petitioner's Sixth Amendment right to a speedy trial.

### 4. Failing to Request an Adjournment in the Second Case

Petitioner claims that his attorney was ineffective for failing to request an adjournment in his second case, the one pertaining to the wig shop burglary. According to Petitioner, defense counsel had too little time to prepare for trial in that case. The Michigan Court of Appeals, however, stated that the complaint in the second case was signed on June 17, 2012, and the warrant was authorized on July 2, 2012. The trial commenced slightly more than three months later on October 10, 2012, and defense counsel did not appear to be unprepared to defend against the charges.

Petitioner contends that defense counsel could have moved for a hearing on the tool-mark evidence or obtained an independent expert on the tool-mark evidence if he had more time to prepare for trial in the wig shop case. But, as the Michigan Court of Appeals pointed out, it is unlikely that the trial court would have found the tool-mark evidence inadmissible, and Petitioner has not shown how further preparation would have aided his case. Thus, defense counsel was not ineffective for failing to request an adjournment of trial in Petitioner's second case.

The Court concludes that defense counsel's performance was not deficient and that the allegedly deficient performance did not prejudice the defense. Therefore, Petitioner is not entitled to relief on his claim about his trial attorney.

### F. The Loss or Destruction of Evidence

Petitioner claims next that the loss or destruction of the jacket and pants he was wearing on the night of the crime deprived him of due process. The Michigan Court of Appeals reviewed this claim for "plain error" because Petitioner did not preserve his claim for appellate review by

raising the same claim in the trial court. The Court of Appeals denied relief because there was no indication that the pants and jacket were exculpatory and there was insufficient evidence of bad faith on the part of the police.

### 1. Clearly Established Federal Law

The Supreme Court has held that "suppression by the prosecution of evidence favorable to an accused upon request, violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). Although Brady makes the good or bad faith of the State irrelevant when the State fails to disclose material exculpatory evidence to the defendant, the Due Process Clause requires a different result when all that can be said is that the evidence might have exonerated the defendant. Arizona v. Youngblood, 488 U.S. 51, 57 (1988). The failure to preserve potentially useful evidence does not constitute a denial of due process unless a criminal defendant can show bad faith on the part of the police. Id. at 58. Additionally, the "evidence must possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v. Trombetta, 467 U.S. 479, 489 (1984); see also Monzo v. Edwards, 281 F.3d 568, 580 (6th Cir. 2002).

### 2. Application

Detective Borcyz testified that the person in the video was wearing a black jacket and dark gray or black pants. 10/12/12 Trial Tr. at 51-52, 54, PageID.653-654, 656. Officer Richardson also viewed the video and alerted other officers to be on the lookout for a suspect wearing a knit cap, what appeared to be a black jacket, a hoodie with a white interior, black pants, and shiny black tennis shoes with bright white soles. 10/11/12 Trial Tr. at 62-64, PageID.552-554.

Officer Stieber testified that, when Petitioner was taken into custody, he was wearing a dark-colored jacket over a gray sweatshirt, which had a distinctive white hood on it. He was also wearing dark pants, a black hat, and dark shoes with bright white soles. According to Stieber, the description that Officer Richardson had provided was identical to what Petitioner was wearing at the time of his arrest. Id. at 73-74, 76-77, PageID.563-564, 566-567. Officer Mason also testified that Petitioner was wearing all dark clothing, including dark gray pants, at his arrest. Id. at 84, 93, 100, PageID.574, 583, 590. Finally, Officer Tanner stated that Petitioner fit the description given of the suspect, and that Petitioner was wearing a black jacket, gray jogging pants or jeans, and a gray sweatshirt. 10/12/12 Trial Tr. at 16, 24, 28, 31, PageID.618, 626, 630, 633. The officers' testimony, as summarized in the preceding paragraphs, indicates that Petitioner was wearing clothes that matched the clothing of the suspect in the videotape. Therefore, he has failed to show that his missing jacket and pants had any exculpatory value.

Petitioner also has failed to show that the prosecution acted in bad faith by failing to preserve his jacket and pants. Some of his clothes were taken from him at the time of his arrest, and Detective Borcyz testified from his experience working as a "turn key" in a Detroit jail that sometimes personal items are placed in a big pile and then disappear. Id. at 52, PageID.654.

Petitioner has failed to establish a due process violation, and the state appellate court's rejection of his claim was neither contrary to, nor an unreasonable application of, Youngblood or Trombetta. Therefore, habeas relief is not warranted on Petitioner's claim about the alleged failure to preserve evidence.

### G. The Prosecutor's Argument

Petitioner asserts that the prosecutor deprived him of a fair trial by denigrating defense counsel during closing arguments. Petitioner contends that the prosecutor's comments went

beyond the bounds of propriety and that the remarks harmed him by prejudicing the jury's deliberations. According to Petitioner, when a prosecutor argues that defense counsel is intentionally trying to mislead the jury, the prosecutor is, in effect, stating that counsel does not believe his own client.

The Michigan Court of Appeals reviewed this claim for "plain error" because Petitioner did not preserve the claim for appellate review. The Michigan Court of Appeals found no plain error in the remarks because the prosecutor did not directly denigrate defense counsel. The Court of Appeals also stated that, had Petitioner objected, the trial court might have issued a warning or curative instruction.

### 1. Clearly Established Federal Law

"Claims of prosecutorial misconduct are reviewed deferentially" in a habeas corpus case, Millender v. Adams, 376 F.3d 520, 528 (6th Cir. 2004), and the Supreme Court's cases "demonstrate that the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). The relevant question is whether the prosecutor's comments infected the trial with such unfairness as to make the resulting conviction a denial of due process. Darden v. Wainwright, 477 U.S. 168, 181 (1986).

> Because that standard is "a very general one," courts have considerable leeway in resolving such claims on a case-by-case basis. Parker v. Matthews, 567 U.S. 37, 48, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012) (per curiam). That leeway increases in assessing a state court's ruling under AEDPA. [Courts] "cannot set aside a state court's conclusion on a prosecutorial-misconduct claim unless a petitioner cites . . . other Supreme Court precedent that shows that state court's determination in a particular factual context was unreasonable." Trimble [v. Bobby, 804 F.3d 767, 783 (6th Cir. 2015)].

Stewart, 867 F.3d at 638-639.

### 2. Application

The disputed comments here occurred during the prosecutor's closing argument. In their context, they read as follows:

> Now, the Defendant would like you to believe as you heard through the argument of [defense counsel] that this is all a coincidence.
>
> It is just a coincidence that the Defendant had the same clothing on as the person in the video? It is just a coincidence that he had the pry bar?
>
> He wants you to buy that garbage. If you buy that garbage, then I ask you to consider purchasing this invisible house I have for sale. It's on the beach.

10/12/12 Trial Tr. at 98, PageID.700.

Attorneys may not "make unfounded and inflammatory attacks on the opposing advocate," United States v. Young, 470 U.S. 1, 9 (1985), but a prosecutor's direct response to evidence presented at trial or to defense counsel's closing argument is well within the prosecutor's wide latitude to respond to the defense's case. Wogenstahl v. Mitchell, 668 F.3d 307, 330 (6th Cir. 2012).

The disputed remarks in this case were a response to the defense theory and did not denigrate defense counsel personally. Although a reference to a defendant's case as "garbage," may be "undignified and ill-chosen for a professional who is bound by the rules of civility and proper court decorum," such comments do not necessarily infect a trial with such unfairness as to make the resulting conviction a denial of due process. United States v. Davis, 15 F.3d 1393, 1402-1403 (7th Cir. 1994). The trial court, moreover, instructed the jury that the attorneys' statements and arguments were not evidence and that the jurors should base their verdict only on the evidence that was admitted. 10/12/12 Trial Tr. at 123, 125, PageID.725, 727.

The Court concludes that, although the prosecutor's comments were unprofessional, they did not deprive Petitioner of a fair trial. Petitioner has no right to relief on the basis of his prosecutorial-misconduct claim.

**H. The Sentence**

Petitioner's final two claims allege that he is entitled to re-sentencing.

**1. The Amended Judgment of Sentence**

The eighth claim alleges that the trial court erred in amending the judgment of sentence. The court amended the judgment of sentence after the Michigan Department of Corrections notified the court that some of the maximum sentences were improper unless the court intended to sentence Petitioner as a fourth habitual offender. Petitioner contends that the notice sent by the Department of Corrections was merely advisory and informational and that the trial court erred in amending the sentence without giving him notice and an opportunity to be heard.

Petitioner's claim is based on state law, and "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990). A federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 68. The Michigan Court of Appeals, moreover, determined that the trial court's failure to indicate in writing that it was sentencing Petitioner as a habitual offender was a clerical error and that, under Michigan Court Rule 6.435(A) and People v. Howell, 834 N.W.2d 923 (Mich. Ct. App. 2013), the trial court was entitled to correct the clerical error at any time on its own initiative and without a hearing.

To the extent Petitioner is raising a due process issue, his claim lacks merit because the sentencing information report indicated that he was a fourth-offense habitual offender. McAdoo, 2014 WL 4263234, at *8. Further, as the Michigan Court of Appeals recognized, Petitioner's "actual sentences were not changed; rather, the court corrected a clerical error (the omission of the habitual-offender enhancement) that had accidentally made the sentences invalid." Id. at *9.

**2. Notice of Intent to Seek an Enhanced Sentence**

In his ninth and final claim, Petitioner alleges that he did not receive timely notice of the prosecutor's intent to seek an enhanced sentence in the Long John Silver case. The record, however, indicates that the notice charging Petitioner with being a habitual offender was filed on March 1, 2012, <u>see</u> Macomb County Register of Actions, docket entry 183 (Dkt. 10-1), and at Petitioner's arraignment in state circuit court on March 5, 2012, his attorney stated that Petitioner was a fourth habitual offender, 3/5/12 Tr. at 4, PageID.257 (Dkt. 10-5). In addition, on the first day of trial, both the prosecutor and the trial court indicated that Petitioner was charged as a habitual offender, fourth offense, and Petitioner stated that he understood. 10/10/12 Trial Tr. at 4-5, PageID.423-424 (Dkt. 10-18). The Michigan Court of Appeals correctly concluded that there is no indication Petitioner failed to receive the habitual offender notice.

Petitioner also alleges that, when he objected at sentencing to the lack of timely notice, the trial court did not address his objections, nor make any findings regarding the validity of the prior convictions. While it is true that the trial court did not address his objection to the alleged lack of timely notice, <u>see</u> 11/20/12 Sentence Tr. at 6, PageID.751 (Dkt. 10-21), even Petitioner's attorney did not seem to think that it was a legitimate objection. When addressing the trial court, defense counsel said, "I have nothing further to say except that Mr. McAdoo insists that . . . [h]e was not given adequate notice of the habitual status and that that should not have been employed in this case." <u>Id</u>.

As for the validity of the prior convictions, the trial court merely noted that Petitioner had five prior felonies and two prior misdemeanors. <u>Id</u>. at 9, PageID.754. But both Petitioner and his attorney stated that the pre-sentence information report was factually accurate. <u>Id</u>. at 4, PageID.749. Petitioner's sentencing claims do not warrant habeas relief.

## I. Certificates of Appealability and Proceeding <u>In</u> <u>Forma</u> <u>Pauperis</u> on Appeal

Petitioner may not appeal the Court's denial of his habeas petition unless a district or circuit judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El</u>, 537 U.S. at 327 (citing <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).

Reasonable jurists could not find the Court's assessment of Petitioner's claims debatable or wrong. Accordingly, the Court will deny a certificate of appealability. The Court, nevertheless, will allow Petitioner to proceed in forma pauperis on appeal because the Court granted him permission to proceed <u>in</u> <u>forma</u> <u>pauperis</u> in this Court (Dkt. 4), and an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

## IV. CONCLUSION

For the reasons given above, the state appellate court's decision rejecting Petitioner's claims was not contrary to Supreme Court precedent or an unreasonable application of Supreme Court precedent. The state court also did not unreasonably apply the facts to Petitioner's case. Accordingly, the petition for writ of habeas corpus (Dkt. 1) is denied. The Court declines to issue a certificate of appealability, but grants leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u> on appeal.

SO ORDERED.

Dated: July 16, 2018       s/Mark A. Goldsmith
  Detroit, Michigan      MARK A. GOLDSMITH
               United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 16, 2018.

s/Karri Sandusky
Case Manager